# 96 DTA 57

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL DE CAROLINA**

EL PUEBLO DE PUERTO RICO
Recurrido

v.

MIGUEL MONTAÑEZ MIRANDA
Peticionario

Núm. KLCE-95-00416

San Juan, Puerto Rico, a 29 de marzo de 1996

Panel integrado por su presidenta, Juez Rivera de Martínez
y los Jueces Cabán Castro y Martínez Torres

Rivera de Martínez, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

El peticionario solicita que revoquemos la Resolución emitida el 27 de marzo de 1995 por el Hon. Hiram A. Sánchez Martínez, Juez del Tribunal de Circuito de Apelaciones, quien actuaba en el caso de epígrafe como Juez del Tribunal Superior de Carolina, hoy Tribunal de Primera Instancia, Sala Superior de Carolina.

Mediante la resolución recurrida, ▓ el juez Sánchez Martínez declaró no ha lugar una moción del acusado, aquí peticionario, en el caso de *Pueblo v. Miguel Montañez,* Criminal F.V.I. 93G0019, sobre varios asesinatos en primer grado y armas, en la cual solicitaba un nuevo juicio, al amparo de las reglas 192 y 192.1 de las de Procedimiento Criminal. ▓ Inconforme con dicha resolución, presentó el recurso ante nos el 12 de junio de 1995.

El 29 de junio de 1995, emitimos Resolución concediéndole al Procurador General de Puerto Rico, el plazo de veinte (20) días para que compareciera a mostrar causa por lo cual no debíamos revocar la resolución recurrida. Luego de varios incidentes procesales nos percatamos de que por un error administrativo la Resolución nuestra nunca fue notificada al Procurador General. ▓ Procedimos a emitir una nueva Resolución en los mismos términos, la cual fue notificada el 8 de septiembre de 1995.

El 2 de octubre de 1995, el Procurador General presentó una *"Moción de Desestimación al Amparo de la Regla 31 del Reglamento del Tribunal de Circuito de Apelaciones",* y el 26 del mismo mes y año el peticionario presentó una réplica a dicha moción.

El 27 de octubre de 1995, el Procurador General presentó escrito mostrando causa, después de habérsele concedido una prórroga por este Tribunal.

El 21 de noviembre de 1995, mediante Resolución, resolvimos declarar no ha lugar la solicitud de desestimación.

Luego de otros trámites y teniendo el beneficio de la posición de ambas partes, estamos en posición de resolver. Veamos.

## II

El peticionario fue juzgado por cuatro (4) cargos de asesinato en primer grado, un (1) cargo de tentativa de asesinato, cinco (5) cargos de secuestro y secuestro agravado y otros por violaciones a la Ley de Armas.

Después de habérsele celebrado juicio, el día 7 de octubre de 1993, el jurado rindió un veredicto de culpabilidad en todos los cargos, con excepción de los de la Ley de Armas, en los cuales absolvió al acusado. ▓

La teoría del Ministerio Público, la cual evidentemente tuvo credibilidad ante el jurado después del fiscal haber presentado su caso, consistió en el hecho de que el peticionario Miguel Montañez Miranda ordenó los asesinatos de José R. Miranda Márquez, Jéssica Díaz Caraballo, Egguie Manuel Torres Sánchez, Edgar Correa Polanco y Alex Santiago Sierra. Este último sobrevivió a la matanza y fue testigo en el caso. El testigo Santiago Sierra aseguró, entre otras cosas, que el 30 de octubre de 1992, un amigo le pidió que fuera con él y otras personas a ayudarlo a aclarar una imputación que le hacían sobre la desaparición de unos kilos de cocaína.

Declaró, además el referido testigo, que fueron a una caseta en el sector La Cerámica y desde allí salieron custodiados por hombres armados quienes se detuvieron al llegar donde estaba un individuo recostado de un bote a la izquierda de la caseta, que interpretó que era el jefe. Lo observó como a tres (3) pies, lo describió, y lo identificó luego como el acusado Miguel Montañez Miranda.

Testificó también, que vio y conversó con el convicto Montañez en el lugar donde ocurrieron los hechos, que éste le dijo, después de escuchar su súplica, que no podía hacer nada por ellos y que luego hizo un gesto con la mano que él consideró como una orden. de ejecución. Después de eso los asesinaron a todos y a él lo dejaron por muerto.

Posteriormente, un gran jurado federal acusó al convicto-peticionario, Miguel Montañez y a otras personas de haber poseído, con intención de distribuir, un cargamento de cocaína, retirándose luego los cargos contra Miguel Montañez y continuando el caso contra otros acusados.

El 25 de mayo de 1994, como resultado de la investigación criminal sobre narcotráfico, comenzó el

caso en el Tribunal Federal para el Distrito de Puerto Rico, *U.S. v. José Negrón Gil Rubio*, 94-017 (J.A.F.). En dicho juicio, que no había cargos por asesinato, varios testigos con inmunidad declararon sobre los asesinatos por los cuales el peticionario resultó convicto y señalaron a Jorge Hernández Miller como la persona que encontrándose en el lugar de los hechos ordenó las ejecuciones de las víctimas.

El día 9 de noviembre de 1994, el convicto-peticionario presentó una *"Moción Solicitando Nuevo Juicio al Amparo de las Reglas 192 y 192.1 de las de Procedimiento Criminal,"* solicitando del tribunal de instancia, básicamente, que considerara dichos testimonios como prueba exculpatoria en favor de Miguel Montañez Miranda, ya que con toda probabilidad, de ésta haber sido presentada en el juicio, el resultado del mismo hubiera sido distinto. Unió a su moción las transcripciones de los testimonios provistos al acusado, certificadas por la Sra. Mary C. Cochran, taquígrafa oficial asignada a la sala del Juez José A. Fusté, Juez del Tribunal Federal para el Distrito de Puerto Rico.

El 6 de febrero de 1995, el Hon. Hiram A. Sánchez celebró una conferencia en cámara para discutir lo concerniente a la Moción de Nuevo Juicio. Mediante Resolución del 27 de marzo de 1995, declaró no ha lugar la solicitud del convicto peticionario.

El peticionario insta el presente recurso, señalando los siguientes errores:

*"Erró el Honorable Tribunal de Instancia al declarar No Ha Lugar una Moción Solicitando Nuevo Juicio al Amparo de las Reglas 192 y 192.1 de las de Procedimiento Criminal, sin la celebración de la correspondiente vista.*

*Erró el Honorable Tribunal de Instancia al resolver que las transcripciones de testimonio prestado bajo juramento en un juicio en el Tribunal Federal, no satisfacen el requisito de declaración jurada que establece la Regla 188 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 188, cuando el fundamento para la Moción de Nuevo Juicio es el descubrimiento de nueva prueba.*

*Erró el Honorable Tribunal de Instancia al considerar asuntos no sometidos oficialmente a la consideración del Tribunal, aunque discutidos en un "status conference" sin el beneficio de un récord y sin el rigor de una vista formal donde cada parte tuviera la oportunidad de vertir sus solicitudes y fundamentos de derecho.*

*Erró el Honorable Tribunal de Instancia al resolver que los testigos cuyo testimonio jurado se ofreció en apoyo de la solicitud de Nuevo Juicio, no estarían dispuestos a prestar declaraciones juradas escritas u orales y que por tal razón, el aquí peticionario propone inmunidad para éstos."*

Aduce, que contrario a lo expresado por el tribunal de instancia en el sentido de que las transcripciones no contienen indicio alguno de que los testigos estarían dispuestos a declarar en un nuevo juicio, a someterse al contrainterrogatorio del Pueblo de Puerto Rico y más aún, a exponerse a la penalidad de perjurio en nuestra jurisdicción, el peticionario *"confía"* en que los testigos reiterarán en el foro local lo ya declarado en el foro federal. Señala además, que en todo caso, este sería un asunto para tomar la decisión en una vista para dilucidar la moción de nuevo juicio en donde cada testigo vendría acompañado de su abogado, por lo que el aspecto de inmunidad de testigos de defensa sería prematuro.

Argumenta, en adición, que aunque el honorable juez Sánchez resuelve que el peticionario no señaló impropiedad alguna de parte del Ministerio Público para mover al Tribunal a conceder inmunidad a los testigos, no obstante, la fiscalía de Carolina no incluyó como parte del descubrimiento de prueba, ninguna evidencia relacionada con la investigación federal, a pesar de que los agentes locales trabajaban en conjunto con los federales, por lo cual, afirma, que sería pecar de *"incautos"* si no se pensara que estos agentes tenían que tener conocimiento del desarrollo de la investigación federal.

Expone también el peticionario, que aun cuando resulte en una impugnación, los testigos de la fiscalía federal en el caso por narcotráfico señalaron bajo juramento que la persona que ordenó las ejecuciones en cuestión en el lugar de los hechos se llama Jorge Hernández Miller, existiendo en

ocasiones una línea muy fina entre lo que es prueba exculpatoria y prueba impugnatoria. Considera el peticionario que esta prueba lo exculparía definitivamente.

El Procurador General, por su parte, esboza como fundamento en apoyo de su oposición, que el tribunal podía prescindir de la vista en corte para considerar la moción de nuevo juicio y sustituirla por una vista en cámara porque bajo la Regla 192.1 de las de Procedimiento Criminal, *supra*, es discrecional en casos, en que como éste, el peticionario no tiene derecho alguno.

Argumenta, que conforme a la Regla 95 de las de Procedimiento Criminal ■ el fiscal tiene la obligación de hacer entrega al acusado de la evidencia exculpatoria que tenga en su poder, pero, que en este caso, la fiscalía no recibió información sobre investigación federal alguna en torno a los mismos hechos y los que surgieron posteriormente de las transcripciones mencionadas tienen evidencia desfavorable al peticionario ya que lo colocan como miembro de una organización criminal.

Plantea, además, el Procurador General, que ninguno de los testigos propuestos por el peticionario se ubica en el lugar donde Alex Santiago afirmó que observó y habló con el peticionario en el solar de botes el día de los hechos. Que el Sr. Alex Santiago identificó el lugar de los hechos, un solar de botes que resultó ser el *"Sea Mar Marine"* en Vistamar, Carolina. Que hay fotos aéreas de este lugar y del área circundante que fueron admitidas como evidencia del Pueblo y que declaró el dueño del referido local que para la fecha de los hechos se lo tenía arrendado precisamente al Sr. Miguel Montañez, convicto-peticionario, siendo dicho arrendamiento admitido como Exhibit XXIII del Pueblo de Puerto Rico, en el caso en instancia. Además, que el testigo Alex Santiago identificó correctamente no sólo el lugar de los hechos, sino a varias de las personas que allí se encontraban, quienes posteriormente resultaron convictos por los mismos hechos, señalando al peticionario como la persona a quienes le respondían y la persona a quien él se dirigió personalmente.

Aduce también, el Procurador General, que la alegación del peticionario en el sentido de que las transcripciones de los testigos, producto del testimonio dado en corte abierta en el caso ventilado ante el foro federal se pueden considerar juradas, tienen elementos particulares. Señala en primer término, que el hecho de que el juicio contra Negrón Gil era por cargos relacionados con el narcotráfico y no por asesinato, tiene sus implicaciones sobre las declaraciones ofrecidas. Además, que dichas declaraciones no fueron firmadas por el declarante y en adición, que la persona que toma el juramento tiene que dar fe de que tanto éste como la firma del declarante se efectuaron ante sí.

Afirma, en adición, que la moción de nuevo juicio basada en la nueva prueba debe hacerse antes de que se dicte sentencia y que el peticionario fue sentenciado en enero de 1994, habiendo éste conocido los testimonios, según su propia aseveración, para los días 25 y 26 de mayo de 1994.

### III

A tenor de las consideraciones que anteceden, la controversia planteada en el presente recurso básicamente gira en torno a si era o no necesaria la celebración de una vista en corte abierta para considerar los méritos de la moción de nuevo juicio, y si las declaraciones de los testigos en el juicio ante el foro federal satisfacen o no los requisitos que establece la Regla 188 de las de Procedimiento Criminal, ■ dentro de las circunstancias del presente caso.

La referida Regla 188 preceptúa, en lo pertinente, lo siguiente:

El tribunal concederá un nuevo juicio por cualquiera de los siguientes fundamentos:

*"(a) Que se ha descubierto nueva prueba, la cual, de haber sido presentada en el juicio, probablemente habría cambiado el veredicto o fallo del tribunal, y la que no pudo el acusado con razonable diligencia descubrir y presentar en el juicio. Al solicitar nuevo juicio por este fundamento, el acusado deberá acompañar a su moción la nueva prueba en forma de declaraciones juradas de los testigos que la aducirán."* (Enfasis nuestro.)

Dicha Regla requiere para la concesión de un nuevo juicio no sólo el descubrimiento de nueva prueba, sino también, que el acusado no pudo descubrir la misma y presentarla en el juicio con una razonable diligencia.

Establece, además, que la moción deberá ser acompañada con declaraciones juradas de los testigos con los cuales el acusado intenta demostrar al tribunal que dicha prueba, de haber sido presentada, probablemente hubiese cambiado el veredicto o fallo.

La moción en presente caso fue presentada al amparo de las Reglas 192 y 192.1, *supra*.

La Regla 192.1 dispone que el tribunal podrá, a solicitud del acusado, conceder un nuevo juicio cuando después de dictada la sentencia sobreviniere el conocimiento de nuevos hechos o de nuevos elementos de prueba, de tal naturaleza, que evidencien la inocencla del acusado.

Esta regla varía de la anterior en cuanto requiere que la nueva prueba demuestre la inocencia del convicto.

De otra parte, la Regla 192.1 en lo que respecta al requisito de notificación y vista, lee como sigue:

*"(b) **Notificación y vista**. A menos que la moción y los autos del caso concluyentemente demuestren que la persona no tiene derecho a remedio alguno, el tribunal dispondrá que se notifique con copia de la moción, si se trata de una sentencia dictada por el Tribunal superior, al fiscal de la sala correspondiente, y si se trata de una sentencia dictada por el Tribunal de Distrito, al fiscal de la sala del Tribunal Superior, a la cual puedan apelar las sentencias de dicho Tribunal de Distrito. El tribunal proveerá asistencia de abogado al peticionario si no la tuviere, señalará prontamente la vista de dicha moción, se asegurará de que el peticionario ha incluido todos los fundamentos que tenga para solicitar el remedio, fijará y admitirá fianza en los casos apropiados, establecerá las cuestiones en contoversia y formulará determinaciones de hecho y conclusiones de derecho con respecto a la misma.*

*Si el Tribunal determina que la sentencia fue dictada sin jurisdicción, o que la sentencia impuesta excede la pena prescrita por la ley, o que por cualquier motivo está sujeta a ataque colateral, o que ha habido tal violación de los derechos constitucionales del solicitante que la hace susceptible de ser atacada colateralmente, el tribunal la anulará y dejará sin efecto y ordenará que el peticionario sea puesto en libertad, o dictará una nueva sentencia, o concederá un nuevo juicio, según proceda.*

*El tribunal podrá considerar y resolver dicha moción sin la presencia del solicitante en la vista, a menos que se plantee alguna cuestión de hecho que requiera su presencia."*

Se colige, con entera claridad, que la vista es discrecional y si de la faz de la moción y los autos del caso surge que el convicto no tiene derecho alguno, el tribunal no tiene que celebrarla.

Debemos examinar si la moción y la prueba presentada satisfacen los requisitos de las reglas antes mencionadas. Interpretando las mismas, nuestro Tribunal Supremo ha sostenido reiteradamente que la moción de nuevo juicio fundada en el descubrimiento de nueva prueba, sólo procede cuando la misma: (1) no se pudo descubrir con razonable diligencia antes del juicio; (2) no es meramente acumulativa; (3) no impugna la prueba aducida durante el juicio; (4) es creíble; (5) probablemente produciría un resultado diferente. *Pueblo v. Torres Rivera*, ___ D.P.R. ___ (1991) **91 J.T.S. 82;** *Pueblo v. Cruz Chévere*, ___ D.P.R. ___ (1995), **95 J.T.S. 115.**

La Regla 189 de las de Procedimiento Criminal ▆ dispone lo siguiente:

*"La moción de nuevo juicio deberá presentarse antes de que se dicte la sentencia excepto que cuando se fundare en lo dispuesto en el inciso (e) de la Regla 188 deberá presentarse dentro de los treinta (30) días siguientes a la fecha en que se tuvo conocimiento de la muerte o incapacidad del taquígrafo o de la pérdida o destrucción de sus notas, y cuando se fundare en lo dispuesto en la Regla 192 deberá presentarse dentro de los treinta (30) días siguientes a la fecha en que se tuvo conocimiento de los nuevos hechos o de los nuevos elementos de prueba."*

El peticionario en su Petición de *Certiorari* expresa que: *"mientras los numerosos procedimientos en el foro local se encontraban en progreso, en el Tribunal Federal, Distrito de Puerto Rico, se realizaba una investigación criminal sobre narcotráfico la cual incluía la masacre ▆ por la cual el*

*peticionario fue convicto"*. Indica además, que el 25 de mayo de 1994 comenzó el juicio correspondiente al caso *U.S. v. José Negrón Gil de Rubio, supra,* en el foro federal, y que ese mismo día declaró el señor Francisco López Díaz y al día siguiente declararon los señores Angel Santana de Jesús y Juan Vélez Hernández, señalando los tres testigos, a preguntas de la defensa, a José Hernández Miller como la persona que encontrándose en el lugar de los hechos había ordenado que ejecutasen a las víctimas.

No obstante, a pesar de tener conocimiento desde los días 25 y 26 de mayo de 1994, no fue hasta el 9 de noviembre de 1994, que el peticionario presentó la moción de nuevo juicio.

De acuerdo con la Resolución del foro de instancia, las declaraciones ofrecidas por los testigos en el caso *U.S. v. Negrón Gil de Rubio,* no evidencian la inocencia del acusado. Concluyó dicho tribunal, que la transcripción parcial que se acompañó con la moción de nuevo juicio no exculpa al convicto ni es creíble en aquellas porciones que tiende a impugnar la prueba de cargo o a transferir la responsabilidad penal por los hechos a otra persona. Resolvió además, que el testimonio de cualquier testigo que meramente proponga ubicar en la escena de los hechos a otra persona, aun cuando ésta pudiera tener algún parecido físico con el convicto, no niega por sí mismo, la presencia de éste en la escena del crimen. ■

Del escrutinio cuidadoso y sereno que hemos realizado de los documentos y los testimonios que obran en autos, consideramos que lo resuelto por el tribunal de instancia es correcto. Tales declaraciones definitivamente no descartan los hechos imputados al convicto-peticionario, ni alteran el testimonio del testigo sobreviviente de la masacre, Alex Santiago. A lo sumo, podría considerarse prueba impugnatoria con referencia al testimonio de este testigo, cuya declaración estuvo corroborada en extremos importantes por otra prueba testifical y que mereció credibilidad a los miembros del jurado.

No hay que olvidar que la concesión de un nuevo juicio descansa en la sana discreción del tribunal sentenciador y no debe el tribunal de apelación intervenir con dicha determinación a menos que se demuestre un claro e inequívoco abuso de esa discreción. *Pueblo v. Cruz Chévere Heredia, supra.* No hay base para variar la conclusión del tribunal en el presente caso, ni para resolver que la nueva prueba, por haber sido suprimida, socava la confianza en el resultado del juicio. *Pueblo v. Torres Rivera, supra.*

De otra parte, el hecho de que las partes dirimieran todos los planteamientos en una vista en cámara, lo cual no constituye una buena práctica, *Reyes Torres v. Collazo Reyes,* 118 D.P.R. 730 (1987); *Pueblo v. Mojica Cruz,* 115 D.P.R. 69 (1984), aun si lo considerásemos como un error, no estaríamos ante un error perjudicial que amerite la revocación del dictamen judicial. De los argumentos esbozados por el propio peticionario surge la amplia consideración que dio el Tribunal a todos los argumentos expresados por las partes y la libertad, ante la flexibilidad de una vista informal, que tuvo el peticionario para explorar todas las alternativas posibles en aras de demostrar los méritos de su solicitud.

Finalmente, en lo que atañe al requisito de que las declaraciones que acompañan la moción de nuevo juicio deben ser juradas, el foro de instancia resolvió que el convicto-peticionario no cumplió con tal requisito. Razonó el tribunal que la mera transcripción de un proceso penal federal, aun cuando contenga testimonio bajo juramento, no satisface el requisito reglamentario de las declaraciones juradas. Expresó además, que la transcripción parcial que le fue sometida no contenía indicio alguno de que tales testigos estarían dispuestos a declarar en un nuevo juicio y a someterse al contrainterrogatorio del Pueblo de Puerto Rico, y más aún, a exponerse en nuestra jurisdicción a la penalidad de perjurio.

Añadió el Tribunal que para salvar este obstáculo, el peticionario propone que el Pueblo le conceda inmunidad a tales testigos, bajo el argumento de que el tribunal tiene facultad para conceder dicha inmunidad o para ordenar al Pueblo que la conceda, al amparo de la Secc. 1 de la Ley Núm. 3 del 18 de marzo, según enmendada, conocida como Ley de Inmunidad a Testigos, y de lo resuelto por el caso de *U.S. v. Westerdahl,* 945 F d. 1083 (9th. cir. 1991 ) un caso cuyo alcance es el valor persuasivo que pueda tener en nuestra jurisdicción. ■

Ciertamente, no es este tipo de declaración jurada la que contempla la Regla 188 de Procedimiento Criminal. Una declaración extraída de un proceso criminal por delitos distintos y proveniente de un foro diferente, como en el presente caso, no tiene garantías de confiabilidad, ya que ni siquiera hay la certeza de que los testigos estén dispuestos a declarar. De otra parte, nada asegura que éstos declararían lo que el convicto-peticionario alega en su solicitud de nuevo juicio que van a declarar, por lo que resulta en una alegación basada en prueba altamente especulativa. La nueva prueba tiene que surgir inequívocamente las declaraciones juradas, siendo necesario, además, que el tribunal tenga la certeza de que los testigos la aducirán. Esta no es la realidad en el presente caso.

Debemos considerar, también, que la moción de nuevo juicio va dirigida a la discreción del tribunal y no procede si el descubrimiento de nueva prueba no es suficiente por sí sólo para derrotar la determinación de culpabilidad, a menos que se demuestre un claro abuso de discreción del tribunal. *Pueblo v. Morales Rivera,* 115 D.P.R. 107 (1984); *Pueblo v. Prieto Maisonet,* 103 D.P.R. 102. (1974); *Pueblo v. Rodríguez Vallejo,* 100 D.P.R. 4236 (1972). No surge en este caso abuso de discreción alguno por parte del juez del tribunal de instancia, ni prejuicio, parcialidad o error manifiesto, y la nueva prueba está muy lejos de derrotar la determinación de culpabilidad. *Pueblo v. Cruz Chévere Heredia, supra.*

## IV

Por los fundamentos que anteceden y no habiendo cumplido el peticionario con ninguno de los requisitos dispuestos por las disposiciones reglamentarias antes citadas, expedimos el auto y confirmamos la resolución recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Sonia Pacheco Román
Secretaria General

### ESCOLIOS 96 DTA 57

1. Fue notificada a las partes el día 12 de mayo de 1995.

2. 34 L.P.R.A. Ap. II, R. 192; 192.1.

3. Este Tribunal comenzó sus funciones después del mes de marzo de 1995, luego de haber entrado en vigor la Ley de la Judicatura de 1994. Durante los primeros meses de organización, como es natural, nos enfrentamos a múltiples dificultades que afectaron el funcionamiento del mismo.

4. Se dictó sentencia el 14 de enero de 1994.

5. 34 L.P.R.A. Ap. II, R. 95.

6. 34 L.P.R.A. Ap. II, R. 188.

7. 34 L.P.R.A. Ap. II, R. 189.

8. Se conoció como: *"La Masacre de Halloween".*

9. Véase las páginas 5 y 6 de la Resolución del Tribunal.

10. Véanse págs. 2, 3 y 4 de la Resolución del Tribunal. Sobre ésto expresa que *Westerdahl* no sostiene lo que propone el peticionario, sino que, por el contrario, enuncia como regla general que un acusado no puede obligar al gobierno a concederle inmunidad a los testigos de defensa. Se han elaborado normas de excepción a esta regla general, y a este grupo pertenece *Westerdahl* que reconoce que con la intención de garantizarle al acusado un juicio justo, el tribunal podría obligar al Estado a concederle inmunidad a un testigo de defensa si el acusado puede demostrar que el proceso de búsqueda de la verdad en el juicio ha sido distorsionado por conducta

impropia de parte del Ministerio Público. Concluye el tribunal, que aún cuando pudiéramos suponer que la norma minoritaria y de excepción acogida por *Westerdahl* fuese aplicable a Puerto Rico, en el presente caso, el promovente, aquí peticionario, no señaló ninguna impropiedad por parte del Ministerio Público. El peticionario descansa en un derecho general a testimonio inmunizado por simple decreto judicial. Estando ausente algún principio constitucional de superior rango, la autoridad de los tribunales de justicia para obligar al gobierno a concederle inmunidad a los testigos de defensa en casos penales, debe apoyarse en textos legislativos que demuestren una intención clara sobre el particular. La Ley de Inmunidad de Testigos no es uno de esos textos.

Resuelve, en adición, que no obstante lo anterior, aun cuando pudiésemos aceptar el argumento de la facultad discrecional del tribunal para acoger la solicitud de conceder inmunidad a testigos de defensa en esta etapa de los procedimientos, tal facultad tiene que evaluarse armoniosamente con otros principios aplicables a las mociones de nuevo juicio. Por ejemplo, el testimonio inmunizado tendría que ser suficiente en derecho, es decir, tendría que ser material (pertinente y esencial), que no sea meramente de carácter acumulativo ni dirigido a impugnar la prueba aducida durante el juicio, que sea creíble y, sobre todo, tendría que ser de tal naturaleza que con toda probabilidad hubiese cambiado el resultado del caso. *E.g. Pueblo v. Rivero, Lugo y Almodóvar,* 121 D.P.R. 454, 476-77 (1988).

## OPINION CONCURRENTE DEL JUEZ DE APELACIONES SR. MARTINEZ TORRES — 96 DTA 57

San Juan, Puerto Rico, a 29 de marzo de 1996

El acusado, Miguel Montañez Miranda, fue hallado culpable por un jurado el 7 de octubre de 1993, de cuatro cargos de asesinato en primer grado, un cargo de tentativa de asesinato, y cinco cargos de secuestro y secuestro agravado. El Ministerio Público demostró con éxito al jurado que el acusado-peticionario, Montañez Miranda, fue quien ordenó los asesinatos de José R. Miranda Márquez, Jessica Díaz Caraballo, Egguie Manuel Torres Sánchez, Edgar Correa Polanco y Alex Santiago Sierra. Este último sobrevivió la llamada *"Masacre de Halloween"* el 30 de octubre de 1992, y fue testigo de cargo.

En el juicio, Santiago Sierra declaró, en lo pertinente, que en la noche de los hechos, su amigo Egguie le pidió que le acompañara, junto a los demás infortunados, a aclarar una imputación que les hacían sobre la desaparición de varios kilos de cocaína. Tras recorrer varios sitios, llegaron escoltados por varios sujetos armados a un lugar que resultó ser el *"Sea Mar Marine",* en Vistamar, Carolina. Santiago Sierra testificó que vio como a tres pies de distancia al acusado-peticionario, Montañez Miranda, quien daba órdenes por lo que le pareció que éste era el jefe de la ganga. Tras el interrogatorio a los jóvenes antes mencionados, éstos no convencieron a la ganga de su inocencia en relación con la desaparición de la cocaína. Santiago Sierra declaró que Montañez Miranda, tras escuchar la súplica de los jóvenes, les informó que nada podía hacer por ellos e hizo un gesto con la mano que Santiago Sierra interpretó como una orden de ejecución. Después de eso la ganga asesinó a los jóvenes y a Santiago Sierra lo dieron por muerto.

Posteriormente, un gran jurado federal acusó a Montañez Miranda y a otras personas de haber poseído un cargamento de cocaína, con intención de distribuirlo. Los cargos contra Montañez Miranda fueron retirados. Continuaron los procesos criminales contra otros co-acusados, supuestos integrantes de la llamada *"ganga de Mickey Motors"* entre ellos José Negrón Gil Rubio. En el juicio contra éste, varios testigos con inmunidad declararon el 25 y el 26 de mayo de 1994 que quien dio la orden de ejecutar a los jóvenes antes mencionados, por cuyos asesinatos fue convicto Montañez Miranda, fue Jorge Hernández Miller.

Montañez Miranda presentó una moción de nuevo juicio ante el Tribunal de Primera Instancia, el 9 de noviembre de 1994. Solicitó que se consideraran los testimonios dados en el Tribunal Federal como prueba exculpatoria. Unió a su moción las transcripciones oficiales de dichos testimonios, debidamente certificadas.

La moción de nuevo juicio fue discutida en cámara el 6 de febrero de 1995. Mediante resolución de

21 de marzo de 1995, el Tribunal de Primera Instancia (Hon. Hiram A. Sánchez Martínez, Juez) denegó la moción sin celebrar una vista evidenciaria. El acusado acude ante nos de esa resolución.

En el día de hoy, este Tribunal confirma la resolución recurrida. Los fundamentos para esa confirmación no están claros. Por un lado, la mayoría rechaza que las transcripciones sometidas por Montañez Miranda cualifiquen como *"declaraciones juradas"* para fundamentar la moción al amparo de las Reglas 188, y 192.1 de Procedimiento Criminal. Por otro lado, sin embargo, el Tribunal analiza los referidos testimonios transcritos para concluir que no alterarían el resultado del proceso seguido en el tribunal territorial contra Montañez Miranda.

A mi juicio, las transcripciones ofrecidas por Montañez Miranda en apoyo de su moción de nuevo juicio cumplen con lo que exige la Regla 188 de Procedimiento Criminal. Esta dispone, en lo pertinente, como sigue:

*"Regla 188. Nuevo juicio; fundamentos*

*El tribunal concederá un nuevo juicio por cualquiera de los siguientes fundamentos:*

*(a) Que se ha descubierto nueva prueba, la cual, de haber sido presentada en el juicio, probablemente habría cambiado el veredicto o fallo del tribunal, y la que no pudo el acusado con razonable diligencia descubrir y presentar en el juicio. Al solicitar nuevo juicio por este fundamento, el acusado deberá acompañar a su moción la nueva prueba en forma de declaraciones juradas de los testigos que la aducirán."*

El Tribunal define el término *"declaraciones juradas"* muy restrictivamente. Es claro que la regla no se refiere a las *"declaraciones juradas"* como sinónimo de declaraciones de autenticidad o *afidávits*. Sin embargo, tal parece que la mayoría quiere afirmar lo contrario al exponer que las transcripciones presentadas no son el tipo de declaración jurada que contempla la Regla 188.

Las transcripciones reflejan fielmente y de forma oficial, el contenido de todo el testimonio dado por Angel Santana de Jesús, Juan Vélez Hernández y Francisco López Díaz ante el Tribunal Federal. Se trata de declaraciones prestadas bajo juramento; los testigos fueron contrainterrogados. La forma en que se produjeron estos testimonios es más confiable que cualquier *afidávit*. ¿Qué más garantía puede pedirse?

La mayoría, sin embargo, al igual que el foro de instancia, confunde la confiabilidad de la forma en que se produjeron las declaraciones con su veracidad y con la disponibilidad de los testigos. En su Sentencia, este Tribunal asevera que las transcripciones presentadas no tienen garantía de confiabilidad ya que no hay certeza de que los testigos estén dispuestos a comparecer al foro local o si declararían lo mismo. Por tanto, dice el Tribunal, se trata de prueba altamente especulativa.

Esta prueba no es más especulativa que cualquier otra que acompañe una moción de nuevo juicio. Al analizarla, el Tribunal debe determinar primero si lo declarado alteraría el resultado del proceso, pues el descubrimiento de prueba nueva de por sí no es suficiente para ordenar un nuevo juicio. *Pueblo v. Rivero, Lugo y Almodóvar*, 121 D.P.R. 454, 476-77 (1988); *Pueblo v. Morales Rivera*, 115 D.P.R. 107 (1984); *Pueblo v. Prieto Maysonet*, 103 D.P.R. 102 (1974); *Pueblo v. Morales*, 66 D.P.R. 10 (1946). El requisito de juramentación está dirigido a garantizar la probabilidad de que el propuesto testigo dirá en corte lo mismo que aseveró en la declaración jurada.

En el caso de autos, es razonable suponer que los testigos anunciados por Montañez Miranda dirán lo mismo que declararon bajo juramento en el Tribunal Federal. Lo único especulativo es suponer lo contrario. No es razonable pensar que los testigos anunciados desean ser acusados de perjurio y perder la inmunidad que les concedió la fiscalía federal, cosa que de seguro sucedería si cambiaran su historia.

El Tribunal, quizás consciente de lo endeble de su negativa a admitir las declaraciones bajo juramento de los testigos ante el Tribunal Federal, añade a renglón seguido que no surge de forma inequívoca que los testigos declararán. Nuevamente la mayoría confunde el análisis. Las

declaraciones juradas contienen de forma inequívoca lo que los testigos anunciados declararían lo mismo que ya declararon. La oferta de prueba ha sido hecha. Si los testigos se presentan o no es un problema del acusado. Sin sus testimonios el día de la vista de la moción de nuevo juicio, la moción será derrotada, sin duda.

En resumen, no veo porqué el Tribunal de Primera Instancia y este foro han decidido presumir que los testigos anunciados (a) no comparecerán o (b) cometerán perjurio. Tal parece que por primera vez en nuestro sistema judicial, la mala fe se presume.

Ahora bien, mi discrepancia con el Tribunal me obliga a hacer el ejercicio que el Tribunal también hizo. Tal parece que el Tribunal confía tan poco en la fortaleza de su argumento sobre la inadmisibilidad de las declaraciones juradas ofrecidas que tuvo que evaluarlas en los méritos, como si las hubiera admitido. Me parece que el análisis efectuado fue correcto. Los testimonios, ante el Tribunal Federal, si bien derrotan la teoría y contradicen la prueba de cargo en el foro territorial en el sentido de que Montañez Miranda ordenó la ejecución de las cinco víctimas antes mencionadas, no contradicen la presencia de Montañez Miranda en la escena de los hechos ni su participación como coautor de los asesinatos.

Así evaluadas, tales declaraciones juradas no son suficientes para concluir que el Tribunal de Primera Instancia abusó de su discreción al rechazar de plano, sin vista, la moción de nuevo juicio. Es razonable concluir que los testimonios ofrecidos con la moción no alterarían la convicción de Montañez Miranda como coautor de los delitos imputados. *Pueblo v. Chévere Heredia,* Opinión de 22 de agosto de 1995, **95 J.T.S. 115**, pág. 39.

Por ese motivo, estoy de acuerdo con el resultado alcanzado por este Tribunal. Sin embargo, como me parece que las transcripciones de los testimonios bajo juramento de los testigos anunciados cumplen con lo que requiere la Regla 188 de Procedimiento criminal, no puedo prestar mi conformidad a la Sentencia emitida en el día de hoy. Concurro con el resultado por los fundamentos aquí expresados.

**RAFAEL L. MARTINEZ TORRES**
**Juez de Apelaciones**